## Appeal of CALIFORNIA CANNERIES CO.

Docket No. 2228.    Submitted May 5, 1925.    Decided June 23, 1925.

When closing inventories of merchandise have been made without actual knowledge of marketing conditions and prices, the *bona fide* market prices ascertained within a reasonable time thereafter may be used in valuing such merchandise for inventory purposes.

*W. W. Spalding, Esq.*, for the taxpayer.
*Ellis W. Manning, Esq.*, for the Commissioner.

Before GREEN, LANSDON, and LOVE.

This is an appeal from a deficiency in income and profits taxes for the calendar year 1918, in the amount of $21,535.72, of which amount $13,151.55 is in controversy. The deficiency in controversy arose from the action of the Commissioner in increasing the closing 1918

inventory of the taxpayer by $15,960.82, and thereby increasing the net income in the same amount.

FINDINGS OF FACT.

1. The taxpayer is a California corporation engaged in the business of canning and preserving fruit and vegetables.

2. In the first week of January, 1919, it made an inventory of its stock on hand and fixed a value purporting to be based on cost or market, whichever was lower. Three or four weeks later it revised its figures as to the value of its canned tomatoes, resulting in a lower value of $15,960.82. The original inventory and the revised final inventory in dispute are as follows:

| Cases | Description | Dozen | Original inventory | Final inventory |
|-------|-------------|-------|---------|-------|
| | IN SAN FRANCISCO | | | |
| A1 | 8-ounce tomato sauce | 8 | $0. 40 | $0. 30 |
| A2 | 8-ounce tomato sauce | 12 | . 40 | . 30 |
| A27 | 8-ounce tomato sauce (quarantined) | 162 | | |
| B1 | No. 1 flat standard tomatoes | 4 | . 75 | . 50 |
| B1 | No. 1 tall standard tomatoes | 4 | . 78 | . 50 |
| A1 | No. 1 tall tomato sauce | 4 | . 78½ | . 50 |
| B1, 184 | No. 2½ standard tomatoes | 3, 768 | 1. 19 | . 80 |
| 753 | No. 2½ solid pack tomatoes | 1, 506 | 1. 28 | . 90 |
| 4 | No. 2½ tomato paste | 8 | 1. 19 | . 80 |
| 3 | No. 6/10 solid pack tomatoes | 1½ | 3. 85 | 2. 85 |
| B2, 824 | No. 6/10 standard tomatoes | 1, 412 | 3. 00 | 2. 00 |
| A9 | No. 6/10 tomato pulp | 4½ | 1. 75 | 1. 20 |
| A1 | No. 6/10 tomato pulp (from whole tomatoes) | ½ | 2. 00 | 1. 30 |
| 5, 511 | | | | |
| | IN NEW YORK | | | |
| A222 | 8-ounce tomato sauce (8 dozen) | 1, 776 | . 40 | . 30 |
| A1, 500 | 8-ounce tomato sauce (6 dozen) | 9, 000 | . 40 | . 30 |
| B705 | No. 1 flat standard tomatoes | 1, 410 | . 75 | . 50 |
| 12 | No. 1 tall solid pack tomatoes | 48 | . 84 | . 60 |
| B941 | No. 1 tall standard tomatoes | 3, 764 | . 78 | . 50 |
| A1, 520 | No. 1 tomato sauce (tall) | 6, 080 | . 78½ | . 50 |
| A434 | No. 1 tall tomato pulp | 1, 736 | . 78½ | . 50 |
| A24 | No. 1 tall tomato pulp (from whole tomatoes) | 96 | . 82 | . 60 |
| 34 | No. 2½ solid pack tomatoes | 68 | 1. 28 | . 90 |
| B415 | No. 6/10 standard tomatoes | 207½ | 3. 00 | 2. 00 |
| A6, 754 | No. 6/10 tomato pulp | 3, 377 | 1. 75 | 1. 20 |
| A1, 852 | No. 6/10 tomato pulp (from whole tomatoes) | 926 | 2. 00 | 1. 30 |
| 14, 413 | | | | |
| | IN TRANSIT | | | |
| A200 | 8-ounce tomato sauce | 1, 600 | . 40 | . 30 |
| 100 | No. 1 tall solid pack tomatoes | 400 | . 84 | . 60 |
| B1, 090 | No. 1 tall standard tomatoes | 4, 360 | . 78 | . 50 |
| A200 | No. 1 tall tomato sauce | 800 | . 78½ | . 50 |
| B2, 200 | No. 2½ standard tomatoes | 4, 400 | 1. 19 | . 80 |
| B700 | No. 6/10 standard tomatoes | 350 | 3. 00 | 2. 00 |
| 4, 490 | | | | |

3. Prior to the war the taxpayer was engaged in the business of canning and preserving fruit, but in the year 1918, at the instance of the United States Food Administration, it, in common with other canneries, undertook the canning of tomatoes in large quantities. As late as September 27, 1918, the taxpayer was required to reserve

45 per cent of its output for the Army and all of its output in the case of "solid pack." The canned product was required to be of certain quality and in specified tins, somewhat different from that ordinarily marketed to the public. After the Armistice the taxpayer had an unusually large stock of canned goods on hand in New York, in San Francisco, and in transit. During 1918 it had not as yet delivered any of its stock to the Government or received money therefor, nor did it receive any money for any loss or damage, by reason of cancellation of its delivery orders, from the Government. In December, 1918, the market for tomatoes was in a very unstable and uncertain condition, due to the large stock left in the hands of the canneries and the probability that the United States Quartermaster Corps would also sell its supply of canned tomatoes to the public. The market for the taxpayer's product was also affected by the fact that it was of an inferior quality, due to taxpayer's inexperience in canning tomatoes and its inability to produce the same standard as other experienced competitive canneries. The taxpayer was unable to make any sales in December.

4. The original inventory made for December 31, 1918, was based on what the officers of the taxpayer thought was cost or market value, whichever was lower, but three or four weeks later, after becoming more familiar with the market conditions, they found that their valuation as of December 31, 1918, was too high and thereupon revised their inventory at the lower values based on actual market conditions and prices. Subsequently, in the years 1919, 1920, and 1921, the entire stock was finally sold at a total liquidating amount even lower than the revised inventory value. The Commissioner refused to accept the revised inventory values and restored $15,960.82 to the inventory value, thereby increasing the taxable income of the taxpayer in the same amount.

### DECISION.

The deficiency heretofore determined by the Commissioner is disallowed to the extent of $13,151.55, and the balance of such deficiency is approved.

### OPINION.

LANSDON: The sole issue in this appeal is whether the original closing inventory or the revised inventory is the proper one to adopt in computing the taxable income of the taxpayer for the year 1918. The Commissioner adopted the original inventory and rejected the revised inventory upon the theory that the revised inventory was based on an estimate due to the prospect that certain conditions might obtain in the future. The question resolves itself into

whether the revised closing inventory was in fact based on market values as of December 31, 1918, or was based on an estimate of what the articles inventoried would bring in the future.

Section 203 of the Revenue Act of 1918 provides:

That whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

The Commissioner has prescribed, by regulations, that when an inventory purports to be upon the basis of the market value, such market value shall be as of the time at which the inventories are taken and shall not be based upon future contingencies.

There is no question that in December, 1918, the market for canned tomatoes was in an uncertain and chaotic condition. Canneries were stocked up with enormous quantities of tomatoes which had been packed at the instance of the United States Food Administration in anticipation of their use by the armed forces of the United States in the World War. Forty-five per cent was expressly reserved for the United States Government. After the Armistice deliveries and sales to the Government were refused. There was also the probability of the market being flooded by the United States Quartermaster sales. There had been no sales by the taxpayer in December, 1918. There was an extreme uncertainty as to just what the stock on hand was worth in the market at that time. The taxpayer made its original closing 1918 inventory, to the best of its ability, in the week following the close of the year. Three or four weeks later, after market conditions became better known and after a careful study of market conditions had been made, the taxpayer found it had overestimated the December 31, 1918, values and revised its inventory accordingly.

As to whether the inventory values were in fact based on future contingencies or upon the December, 1918, market condition, we must look to the parties that actually fixed the inventory values. All the parties instrumental in fixing the values have testified convincingly that the revised inventory values as of December 31, 1918, were based on market conditions that existed at that time and not upon future contingencies. No other evidence on this point is before the Board. We feel that we can not disregard such positive and uncontroverted testimony. This Board has heretofore recognized revised closing inventories made in good faith. *Appeal of Summit Wholesale Grocery Co.*, 1 B. T. A. 1040. Therefore, we are of the opinion that the Commissioner erred in refusing to accept the revised inventory.